UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| LARRY BARRETT, | : | Case No. 3:16-cv-112 |
| --- | --- | --- |
| Plaintiff, | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| NANCY A. BERRYHILL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. Introduction

Plaintiff Larry Barrett brings this case challenging the Social Security Administration's denial of his applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income. He applied for benefits on August 25, 2010, asserting that he could no longer work a substantial paid job. Administrative Law Judge (ALJ) David A. Redmond concluded that he was not eligible for benefits because he is not under a "disability" as defined in the Social Security Act.

The Appeals Council denied Plaintiff's request for review, and he filed a previous action in United States District Court for the Southern District of Ohio. *See Barrett v. Commissioner of Social Security*, 3:14-cv-102, 2015 WL 1187290 (S.D. Ohio June 24,

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

2015) (D.J. Rose).  The Court vacated the Commissioner's decision and remanded the case pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.  *Id.* at *1.  Upon remand, ALJ Mark Hockensmith issued a decision finding that Plaintiff is not under a "disability" and thus, not eligible for benefits.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #12), the administrative record (Doc. #s 6-7), and the record as a whole.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings.  The Commissioner asks the Court to affirm ALJ Hockensmith's non-disability decision.

## II.    **Background**

Plaintiff asserts that he has been under a "disability" since November 1, 2007.  He was thirty-seven years old at that time and was therefore considered a "younger person" under Social Security Regulations.  20 C.F.R. §§ 404.1563(c), 416.963(c).  He has a limited education.  20 C.F.R. §§ 404.1564(b)(3), 416.964(b)(3).

Plaintiff testified at the hearing before ALJ Hockensmith that he had pneumonia and had to have lung surgery in 2008. (Doc. #7, *PageID* #661).  He believes he only has half of his lung.  *Id.* at 662.  He is frequently out of breath and has chest pain.  *Id.*  He has regularly seen doctors at the Cassano Clinic since his lung surgery.  *Id.* at 658.

Plaintiff has diabetes and has problems with his legs and feet.  His feet and shins go numb, cramp badly, and ache. *Id.* at 659.  If he sits for too long, his legs bother him and he is in pain. *Id.*  Usually, he gets up and walks around at home if they start hurting

too much. *Id*. He and Charlene, his girlfriend, sometimes go on one to two minute walks. *Id.* at 661. He cannot walk very far because his legs give out and he falls. *Id.* at 666. He has broken his ankle from falling. *Id*.

Plaintiff has a lot of pain in his back. *Id.* at 662. When he is in bed, he cannot lie in just one spot for too long. *Id.* at 663. Sitting also causes back pain. *Id*. His hands also cramp up. *Id.* at 664. He takes medication, but it makes him feel itchy and drowsy. *Id.* at 665.

Plaintiff struggles with anxiety and depression. *Id.* at 664. He sometimes gets scared and cries. *Id*. He is worried because, "I can't work …. I have nothing." *Id*.

Plaintiff dropped out of high school in tenth grade. *Id.* at 648. Throughout school, he was in special education classes. *Id*. When he was around twenty-four years old, he tried to take the GED test but "couldn't even read it …." *Id*. He did not attend any classes prior to taking the test. *Id*.

Plaintiff obtained a State Tested Nurse Aide (STNA) license. *Id*. He first took a forty-hour class and then had to take a test. *Id.* at 649-50. When he was unable to read the test, they tried reading him the questions, but he still could not pass. *Id.* at 650. They then sent the test home with him, and he still did not pass. *Id*. Despite failing the test, Plaintiff testified that they still gave him a license. *Id.* at 650-51. He then worked as an STNA in an Alzheimer's unit where he had to feed patients, give them baths, put their clothes on, etc. *Id.* at 653. He explained that the entire job was physical and required a lot of lifting. *Id*. His last job was in 2007 at a concrete company. *Id.* at 654. He said that he never "did concrete" but may have cleaned up the yard. *Id*.

Plaintiff lives in a trailer with Charlene. *Id.* at 645. She helps him with almost everything, including going to the grocery for him. *Id.* at 646, 663. His brother pays his rent. *Id.* at 645. Plaintiff does not have a driver's license. *Id.* at 647. During the day, he eats, watches TV, and uses the bathroom. *Id.* at 663. He does not shower every day because it is difficult for him to get in and out of the shower. *Id*. He is not able to do much around the house. *Id*. He is able to warm food in the microwave but cannot cook. *Id*. When he needs to go somewhere, his brother or Charlene usually takes him. *Id.* at 647.

Plaintiff had difficulty reading and understanding applications and his mail. *Id.* at 655. He can write his name and address and then his brother usually completes the application. *Id*. He has trouble writing and spelling as well. *Id.* at 656. When he used to work, his brothers managed his money. *Id.* at 667

## III. <u>Standard of Review</u>

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part

*Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

IV. **The ALJ's Decision**

As noted previously, it fell to ALJ Hockensmith to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[2] He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since November 1, 2007.

Step 2: He has the severe impairments of degenerative disc disease of the lumbar spine, residuals of thoracotomy for empyema, diabetes mellitus, anxiety, and borderline intellectual functioning.

Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … except: (1) sit for 6 hours, with the ability to stand for a minute or two every hour while remaining at the workstation; (2) no climbing of ladders, ropes, or scaffolds; (3) frequent use of ramps or stairs; (4) occasional balancing, stooping, kneeling, crouching, and crawling; (5) no use of foot controls; (6) occasional pushing and pulling with the lower extremities; (7) must avoid concentrated exposure to fumes, dusts, gases, odors and poorly ventilated areas; (8) is limited to simple, routine tasks; (9) in a static work environment with few changes in routine; (10) no fast paced work or strict production quotas; (11) is limited to making simple, work-related decisions; and (12) no jobs requiring more than a 6th grade reading or math level."

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

Step 4: He is unable to perform any of his past relevant work.

Step 5: He could perform a significant number of jobs that exist in the national economy.

(Doc. #7, *PageID* #s 617-28). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 628.

V. **Discussion**

Plaintiff contends that the ALJ erred in finding that Plaintiff's impairment did not meet or equal Listing 12.05C. He also argues that the ALJ erred in weighing the opinion of the State agency record-reviewing doctor. The Commissioner maintains that substantial evidence supports the ALJ's finding that Plaintiff's impairments did not meet or medically equal a listing and his evaluation of medical opinions.

A. **Listing 12.05C**

ALJ Hockensmith found that Plaintiff's borderline intellectual functioning does not meet the requirements of Listing 12.05C. (Doc. #7, *PageID* #s 619-20). To meet the listing for intellectual disability, an individual's impairment must satisfy the diagnostic description in the introductory paragraph and any of the four sets of criteria. 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00A. Listing 12.05C provides:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .

7

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. § 404, Subpt. P, App. 1, § 12.05C. Thus, a plaintiff seeking to establish an intellectual disability under Listing 12.05C must prove three elements: (1) an IQ score between 60 and 70; (2) a second impairment causing work-related limitations; and (3) subaverage general intellectual functioning with deficits in adaptive functioning that began before age 22. *Id.*

In the present case, the ALJ's discussion of Listing 12.05C was brief:

> [Plaintiff] does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. While [Plaintiff] has had IQ scores in this range, these scores conflict with other higher scores of record. Regardless, [Plaintiff] still does not have marked, extreme, or even moderate limitations in his adaptive functioning. This is supported by the fact that, despite what his school records may indicate, [Plaintiff] currently does not have significant limitations in his ability to communicate, socialize, obey laws, care for his own personal needs, be aware of normal hazards and take appropriate precautions, travel to unfamiliar places or use public transportation, or set realistic goals or make plans independently of others. (Ex. 15F/2).

(Doc. #7, *PageID* #s 621-22). Oddly, the ALJ again discusses Listing 12.05 at Step 4. He notes that Plaintiff "has mild limitations in his activities of daily living/adaptive functioning. This is evident by his reported daily activities as well as his ability to get his STNA license and perform the semi-skilled work for years."

8

*IQ Score*

ALJ Hockensmith found that Plaintiff does not have a valid verbal, performance, or full scale IQ of 60 through 70: "While [Plaintiff] has had IQ scores in this range, these scores conflict with other higher score of record." (Doc. #7, *PageID* #621). The ALJ later adds, "IQ scores prior to the age of 22 were above listing level." *Id.* at 624 (citing Exhibit 1F/22). The ALJ provided two reasons for finding that Plaintiff did not have a valid, qualifying IQ. First, Plaintiff's more recent scores are inconsistent with the scores from 1986. *Id.* at 621-22. Second, Plaintiff's 2008 and 2010 IQ scores are "not reflective of his ability to perform semi-skilled work." *Id.* at 625.

Plaintiff correctly points out—and the Commissioner acknowledges—that the ALJ "improperly conflated the requirements of the introductory paragraph for Listing 12.05" by requiring Plaintiff to have qualifying IQ scores before the age of twenty two. (Doc. #8, *PageID* #1052); (Doc. #11, *PageID* 1074) (citations omitted). However, the Commissioner asserts that this error was harmless because "the ALJ would have reached the same outcome because he did not find that Plaintiff had valid, qualifying IQ scores to satisfy Listing 12.05." (Doc. #11, *PageID* #s 1074-75).

The record contains the results of three different intelligence tests. In May 1986, on the Wechsler Intelligence Scale for Children – Revised (WISC-R), Plaintiff received a full scale IQ of 75, verbal IQ of 73, and performance IQ of 81. (Doc. #6, *PageID* #320. In August 2008, Dr. Bonds administered the Wechsler Adult Intelligence Scale – Third Edition (WAIS-III), and Plaintiff obtained a full scale IQ of 66, verbal IQ of 67, and performance IQ of 70. *Id.* at 391. Two years later, Dr. Payne then administered the

Wechsler Adult Intelligence Scale – Fourth Edition (WAIS-IV), and Plaintiff received a full scale IQ of 67. *Id.* at 497.

Substantial evidence does not support the ALJ's reasons for finding the results of two more recent IQ tests invalid. The fact that the results of all three tests are not exactly the same does not mean the results are invalid and does not reasonably support the ALJ's decision to give more credit to scores from one test in 1986 than to scores from two tests in 2008 and 2010. Further, the ALJ does not acknowledge that Dr. Bonds noted the differences between the WISC-R and WAIS-III and opined, "This may be due to the difference in tests administered." *Id.* at 387. He further noted that Plaintiff's scores are consistent with his reported learning problems and special education classes in school. *Id.* at 388. And, with great confidence, Dr. Bonds predicted, "Chances are 95 out of 100 that upon subsequent administrations of this test, [Plaintiff] would validly obtain a Full Scale IQ between 63 and 71." *Id.* at 387. Additionally, an individual's ability to perform semi-skilled work is not inconsistent with a full scale IQ of 66-67. *See Brown v. Sec'y of Health and Human Serv.,* 948 F.2d 268, 270 (6th Cir. 1991) ("[A]s a truck driver, Mr. Brown recorded mileage, the hours he worked, and the places he drove. We do not deem these facts to be inconsistent with a valid test I.Q. of 68 …."). This is certainly true in Plaintiff's case given the physical work he performed as an STNA.

The Regulations require a plaintiff to show "a valid verbal, performance, or full scale IQ of 60 through 70 …." 20 C.F.R. § 404, Subpt. P, App. 1, § 12.05C. And, "In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use

the lowest of these in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.00(D)(6)(c). Plaintiff's lowest verbal IQ of 66 and full scale IQ 66-67 clearly falls into the range required by the listing.

*Additional Impairments*

Plaintiff has also shown that he has other impairments that impose an additional and significant work-related limitation of function. The ALJ found that in addition to Plaintiff's borderline intellectual functioning, his severe impairments included degenerative disc disease of the lumbar spine, residuals of thoracotomy for empyema, diabetes mellitus, and anxiety. (Doc. #7, *PageID* #619).

These findings demonstrate that Plaintiff satisfies Listing 12.05C's requirement of an "additional and significant work-related limitation of function." The Regulations explain, "For paragraph [12.05]C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, *i.e.,* is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c)." 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00(A). Consequently, the ALJ's determination at Step 2 that Plaintiff had several "severe" impairments under § 404.1520(c) effectively determined that these impairments imposed "additional and significant work-related limitation of function" in satisfaction of Listing 12.05C.

*Adaptive Functioning*

The introductory paragraph of Listing 12.05 requires that the individual show "significantly subaverage general intellectual functioning with deficits in adaptive

11

functioning initially manifested during the developmental period." 20 C.F.R. § 404, Subpt. P, App. 1, § 12.05. "Adaptive functioning refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting." Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision, at p. 42. Additionally, "The American Psychiatric Association defines adaptive-skills limitations as 'concurrent deficits or impairments . . . in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.'" *Hayes v. Comm'r of Soc. Sec.,* 357 F. App'x 672, 677 (6th Cir. 2009) (quoting DSM-IV-TR at 49).

ALJ Hockensmith concluded,

> [Plaintiff] still does not have marked, extreme, or even moderate limitations in his adaptive functioning. This is supported by the fact that, despite what his school records may indicate, [Plaintiff] currently does not have significant limitations in his ability to communicate, socialize, obey laws, care for his own personal needs, be aware of normal hazards and take appropriate precautions, travel to unfamiliar places or use public transportation, or set realistic goals or make plans independently of others.

(Doc. #7, *PageID* #622) (citing Ex. 15F/2).

The record contains significant evidence of Plaintiff's deficits in adaptive functioning. His school records detail his difficulties with both academics and social skills. When Plaintiff was in ninth grade, a school psychologist, Jacqueline Spaulding, administered several different tests, including the WISC-R discussed above and the

Vineyard Social Maturity Scale, a test that measures adaptive behavior. (Doc. #6, *PageID* #s 320-21). The results of the Vineyard Social Maturity Scale indicated that Plaintiff had low daily living skills (personal, domestic, and community) and low socialization skills (interpersonal relationships, play and leisure time, and coping). *Id.* at 321. Further, at the time of the exam, Plaintiff was 16 years and 4 months old, but his mental age was 12 years and 3 months old. *Id.*

In June 1986, an evaluation team consisting of Dr. Spaulding, one of Plaintiff's teachers, and a counselor reported that he had a below average ability to learn and was below in both grade level and achievement. *Id.* at 318. Additionally, "VERY slow with paper/pencil tasks. Makes excuses for quality of work. Can be very argumentative. Highly distractible. Forgets what appeared to have been learned (long term memory deficit)." *Id.* In 1987, as part of Plaintiff's individualized education plan, the team noted that he "is not adjusting to any situation in school. He is disruptive." *Id.* at 323. Further, he liked to argue and constantly talked about fighting. *Id.* "He has inappropriate behavior with adults and members of the opposite sex." *Id.*

Plaintiff's deficits in adaptive functioning continued into adulthood. In 2008, Dr. Bonds noted that Plaintiff's girlfriend completed his background history form because he could not read well enough to complete it himself. *Id.* at 383. He opined that Plaintiff "does not have much insight or understanding of his problems. Judgment and reasoning abilities are far below average. He does not seem to be able to make important decisions without some assistance or supervision." *Id.* at 386. Further, Dr. Bonds found that

Plaintiff's ability to understand, remember, and follow directions is moderately limited. *Id.* at 389.

In 2010, Dr. Payne opined that Plaintiff's "insight may be somewhat limited by his cognitive level. Judgment capabilities appear to be in the borderline range." *Id.* at 493. He also noted Plaintiff scored in the below average range for visual-spatial abilities, short-term auditory memory, and speed of performance combined with visual memory. *Id.* at 494. He scored in the borderline range for math reasoning, symbol search, and visual puzzles, and he scored in the impaired range for abstract reasoning, vocabulary development, general knowledge, and matrix reasoning. *Id.* Because of Plaintiff's anxiety disorder, if the stress level at his work was moderately high, then he would be moderately impaired. *Id.* at 495.

Dr. Semmelman, a record-reviewing State agency psychologist, opined Plaintiff was moderately impaired in his abilities to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and respond appropriately to changes in the work setting. *Id.* at 100-01. She also found that he had moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, and pace. *Id.* at 97.

Notably, the ALJ implicitly acknowledged adaptive deficits in Plaintiff's academic skills: "given his school records and IQ testing, limitations have been added to the

14

residual functional capacity to account for limitations in reading and math." (Doc. #7, *PageID* #625). Specifically, the ALJ limits Plaintiff to jobs that do not require more than a sixth grade reading or math level. *Id.* at 622. Further, the ALJ limits Plaintiff to simple and routine tasks in a static work environment with few changes in routine and no fast-paced work or strict production quotas. *Id.* He also limits him to making simple, work-related decisions. *Id.*

However, the ALJ also found that Plaintiff only has mild limitations in his activities of daily living/adaptive functioning as evidenced by his ability to obtain an STNA license and then perform semi-skilled work. But, these activities are not inconsistent with a finding of intellectual disability. In *Brown v. Sec'y of Health & Human Servs.,* the plaintiff had a driver's license, and when he was employed as a truck driver, he was able to record mileage, the hours he worked, and the places he drove. *Id.* The Sixth Circuit found that these activities were not inconsistent with a valid I.Q. of 68. *Id.* The Court noted that individuals with mild mental retardation[3], "[b]y their late teens . . . can acquire academic skills up to approximately sixth-grade level; during their adult years, they usually achieve social and vocational skills adequate for minimum self-support, but may need guidance and assistance when under unusual social or economic stress. At the present time, *virtually all people with Mild Mental Retardation can live*

---

[3] On August 1, 2013, the Social Security Administration amended Listing 12.05 by replacing the words "mental retardation" with "intellectual disability." *See* 78 F. Reg. 46,499, 46,501 (to be codified at 20 C.F.R. § 404, subpt. P, app. 1). The Administration stated that the change "does not affect the actual medical definition of the disorder or available programs or services." *Id.* at 46,500. Thus, the amendment does not effect a substantive change, and the words "mental retardation" and "intellectual disability" have the same meaning and are sometimes used interchangeably.

*successfully in the community, independently* or in supervised apartments or group homes (unless there is an associated disorder that makes this impossible)." *Id.* (emphasis in original) (citing DSM-III-R § 317.00).

Plaintiff—whether one believes his account of obtaining his STNA license and working, or not—was, similarly to the plaintiff in *Brown,* able to obtain his license and perform semi-skilled work for several years. Despite this, the record establishes Plaintiff's significant deficits in adaptive functioning as Listing 12.05C requires.

For the above reasons, Plaintiff's Statement of Errors is well taken.[4]

### B. Judicial Award of Benefits

Remand is warranted when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand for an ALJ's failure to follow the regulations might arise, for example, when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff's credibility lacking, *Rogers*, 486 F.3d at 249.

---

[4] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted "only where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking." *Felisky*, 35 F.3d at 1041 (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

In the present case, the evidence of record establishes that a remand for award of benefits is warranted because the record contains overwhelming evidence, or strong evidence while contrary evidence is lacking, that Plaintiff met the criteria of Listing 12.05C.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be reversed and this case be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for payment of benefits; and

2. The case be terminated on the docket of this Court.

Date: June 12, 2017            *s/Sharon L. Ovington*
                                                    Sharon L. Ovington
                                                    United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).